BURNS *v.* WILLIAMS.

Opinion delivered March 7, 1921.

1.  MORTGAGES—MORTGAGEE IN POSSESSION—REPAIRS.—A mortgagee in possession is entitled to reimbursement on foreclosure or redemption for repairs reasonable or necessary for the preservation and beneficial occupation of the property.

2.  MORTGAGES—RIGHT OF MORTGAGEE TO REIMBURSEMENT FOR REPAIRS.—A mortgagee in possesion has no right to increase the burden of redeeming; and if he makes repairs which are not necessary to preserve the estate, he is not entitled to compensation for them, although they are of such a nature as to increase the rental value of the premises.

3.  IMPROVEMENTS—COLOR OF TITLE.—A bond for title is not color of title on which to base a claim for improvements made by the occupant.

4.  MORTGAGES—MORTGAGEE IN POSSESSION—RENTS.—Where a mortgagee in possession without authority made permanent improvements, for which he is denied compensation, he should be charged with such sums as are a fair rent of the premises, without such improvements.

Appeal from Union Chancery Court; *J. M. Barker,* Chancellor; modified and affirmed.

*Geo. M. LeCroy,* for appellant.

The master's report is clearly against the clear preponderance of the evidence, as the deed, though absolute in form, was in fact a mortgage, as the rents did not in fact pay the mortgage debt. No part of the mortgage debt has ever been paid and there is a large balance due Burns.

*J. B. Moore,* for appellee.

1.  The testimony fails to show that appellant ever made or paid for any improvements or repairs on the land. The deed was a mortgage; this is conceded.

2. The matter of balance due for supplies alleged to have been furnished for 1913 and 1914 was finally disposed of by the court in its dismissal for want of equity and is not before the court now.

The testimony discloses that John Daniels claims that he made all improvements without color and with knowledge of title that appellees executed the deed of conveyance as a mortgage to secure the repayment of $536.88 advanced as a loan, with notice that it was a mortgage. And he can not be heard to interpose any pleading against appellees for the value of improvements made by him on said lands under such evidence. Kirby's Digest, § 2754; 67 Ark. 184-8; 72 *Id.* 601; 53 *Id.* 545; 59 *Id.* 144; 97 *Id.* 397; 89 *Id.* 41; 93 *Id.* 93; 101 *Id.* 9; 128 *Id.* 15, 16.

The evidence offered was irrelevant and incompetent. The master's finding and the decree are clearly supported by the evidence.

HART, J. Nelson Williams and Hester Williams, his wife, brought this suit in equity against W. A. Burns, Jr., to have a deed, absolute in form, executed by them to Burns, declared a mortgage, and for an accounting by Burns of the rents and profits derived from the land described in the complaint.

Burns defended on the ground that the instrument sued on was an absolute conveyance, and also claimed that, if it should be found by the court to have been intended as a mortgage, he had not received sufficient rents and profits to pay off the mortgage indebtedness.

The land in controversy comprised a farm of 118 acres in Union County, Arkansas. Nelson Williams and Hester Williams, his wife, executed a mortgage on the land in controversy to one Jameson to secure an indebtedness of $536. On the 26th day of November, 1912, they arranged with W. A. Burns, Jr., for a loan to pay off the mortgage indebtedness. They executed to Burns a deed absolute in form to the land in controversy, but they intended it as a mortgage to secure the money they

borrowed from Burns, and Burns so understood the transaction. In the fall fo 1913 Williams delivered to Burns seven bales of cotton, and in 1914 delivered to him four bales of cotton. Williams had a merchandise account with Burns, and the cotton delivered to Burns was more than sufficient to pay off his merchandise account and the balance of the proceeds of the cotton was applied toward the payment of the mortgage indebtedness. In 1915 Burns took possession of the land in controversy and rented it to John Daniels, a son-in-law of Williams. In 1916 Burns executed to Daniels a bond for title, agreeing to convey to him said land upon the payment of the purchase price designated in the instrument. Daniels remained in possession of the land until the institution of this suit and is still in possession of it.

The case was heard on the 3d day of December, 1919, and the chancellor held that the instrument sued for, although absolute in form, was intended by the parties to be a mortgage. The chancellor then appointed a master to state an account between the parties. The master reported that Burns was indebted to Williams in the sum of $484.13 for rents and profits derived from the land by him as mortgagee in possession. Burns made no objection to the finding of the chancery court that the deed, although absolute in form, was intended by the parties as a mortgage. He only prosecutes an appeal to reverse that part of the decree which holds him accountable to Williams for the rents and profits of the land. Burns claims that the finding by the master, which was approved by the court, is erroneous, and that the fact is that the rents did not finish paying off the mortgage indebtedness.

According to the testimony of Williams in the fall of 1913, he delivered to Burns seven bales of cotton and three and one-half tons of cotton seed to be applied toward the payment of his supply account and the mortgage indebtedness. In November, 1914, he delivered to Burns four bales of cotton and two tons of seed to be

applied toward the payment of the supply account and the mortgage indebtedness. There is a dispute between the parties as to the amount of cotton delivered by Williams to Burns and the value thereof. We do not deem it necessary to state the testimony on this point in detail; but we are of the opinion that the finding of the master to the effect that this was more than sufficient to pay off the supply account of Williams, and that the remainder should be applied toward the payment of the mortgage indebtedness is correct.

Burns rented the place to John Daniels during the year 1915. Daniels sold some timber off the place for $230 and paid Burns $200 of it. He put the balance in improvements on the place. The master properly allowed only $200 of this amount to be charged to Burns. The mortgagee in possession is entitled to reimbursement upon foreclosure or redemption for reasonable or necessary repairs made by him while in possession. *McCarron* v. *Cassidy,* 18 Ark. 34; and *Green* v. *Maddox,* 97 Ark. 397. The repairs in question were necessary for the preservation and beneficial occupation of the property by Burns, and the $30 were properly allowed for repairs.

The testimony for Burns shows that Daniels made permanent improvement upon the property by building houses, clearing land, etc., to the value of between $500 and $1,000. Burns was not authorized by Williams to have these improvements made and is not entitled to compensation for them. The mortgagee has no right to increase the burden of redeeming; and, if he makes repairs which are not necessary to preserve the estate, he is not entitled to compensation for them, although they are of such a nature as to increase the rental value of the premises. *Robertson* v. *Read,* 52 Ark. 381, and *Green* v. *Maddox,* 97 Ark. 397.

Daniels was made a party defendant to the action and claims credit for the improvements made by him under the betterment act. He was in possession of the

land during the years 1916 and 1919, inclusive, under a
bond for title from Burns and made the permanent im-
provements during this time. In *White* v. *Stokes,* 67
**Ark. 397.** The repairs in question were necessary for
of title on which to base a claim for improvements made
by the occupant. In *Beasley* v. *Equitable Securities Co.,*
72 Ark. 601, the court reaffirmed this doctrine and de-
clined to overrule *White* v. *Stokes, supra.*

The principal item about which there is a dispute in
the master's account is the rent for the four years from
1916 to 1919, inclusive. Williams and three of his boys
testified that the rental value of the farm for these years
was $200 a year. Daniels also testified that this was the
rental value of the farm. Three witnesses testified for
Burns that the rental value of the land for those years
was only $108 per annum. Burns corroborated their
testimony.

The chancellor charged Burns with rent at the rate
of $200 per annum for those four years. We think the
chancellor erred in so holding. If it can be said that the
rental value of the farm for those years was $200 per
annum, we think the increased rental value arose from
the repairs and permanent improvements made on the
land by Daniels. His testimony showed that he built a
dwelling house, some out-houses, and cleared some land.

In *Robertson* v. *Read,* 52 Ark. 381, the court said
that a mortgagee in possession of a farm is chargeable
with such sums as are a fair rent of the premises; but
that he should not be charged an increased rent caused
by permanent improvements for which he is denied com-
pensation. The court further said that justice is done
by charging him with rent without the improvements, and
that to the extent the rental value is increased by them
he should not be held to account.

In the application of this rule, we think that Burns
should have been only charged with the sum of $125 per
annum for these four years. This was the amount that
Daniels paid as rent before the permanent improvements

were made. The permanent improvements were of such a character as would necessarily add to the rental value of the land. Therefore, we think the chancellor erred in charging Burns with $800 as rent for the years 1916 to 1919, inclusive. He should have only charged him with $500, being the sum of $125 per annum. This would result in decreasing the allowance made by the master in the sum of $300.

The chancellor approved the findings of the master and made an allowance of $484.13 against Burns in the account of rents and profits. This should be reduced by $300, and the decree of the chancellor should have been for $184.13.

The decree will be modified to that extent, and as modified will be affirmed.